## SLICK *v.* HANSEN.

PATENTS; INTERFERENCE; DILIGENCE; PRIORITY.

One who delays filing an application for a patent covering an invention relating to the reforging of worn steel car wheels, for nearly two years, during which time he was engaged in the construction of a large plant for the manufacture of car wheels, and had all the facilities at hand for speedily testing his invention, which did not require special or novel machinery to produce it, and was not of doubtful utility, does not show, as against one who meanwhile conceived the invention and filed the application, such diligence as entitles him to an award of priority.

No. 770. Patent Appeals. Submitted May 14, 1912. Decided May 30, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          *Reversed.*

The facts are stated in the opinion.

*Mr. C. C. Linthicum* and *Mr. W. O. Belt* for the appellant.

*Mr. James I. Kay* and *Mr. Robert D. Totten* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of

Patents in an interference proceeding. The invention relates to the reforging of worn steel car wheels. It is unnecessary to discuss the issue of the interference, since but the single question of the diligence of appellee is presented upon a conceded state of facts.

Appellee conceived the invention August 11, 1906, and constructively reduced it to practice by filing his application for a patent June 13, 1908. Appellant conceived the invention in November, 1906, and constructively reduced it to practice by filing his application December 12, 1907. Priority was awarded appellee by the concurrent decisions of the tribunals of the Patent Office.

It appears that both the parties are men skilled in the art of manufacturing car wheels. Appellee is president of the Forged Steel Wheel Company, the Standard Steel Car Company, and the Standard Truck Company. His experience with dies for working mental, prior to the time he took up the manufacture of forged wheels, extended over a period of twelve years. During that time he was connected with the Schoen Manufacturing Company, the Schoen Pressed Steel Company, the Pressed Steel Car Company, and the Standard Steel Car Company.

Prior to August, 1906, appellee had organized the Forged Steel Wheel Company, capitalized it, and was engaged in the construction of a plant at a cost of $1,000,000, for the manufacture of forged steel car wheels. He had acquired patents, and had a number of other applications pending for patents, on car wheels, for the manufacture of which the plant was being constructed. Appellee attempts to account for his delay of almost two years in reducing to practice, on the ground that the completion of the plant was essential to test out the utility of the invention. We are familiar with the rule that where an invention on its face is of doubtful utility, and requires special and novel machinery to produce it, reasonable delay for the purpose of making the necessary device for producing it, and enabling the inventor to reduce it to practice, will be tolerated. We are also familiar with the cases in which an inventor has

been indulged in delaying reduction to practice, where the invention forms only an element in a complex structure, and its utility cannot be tested until the whole device, of which it is a part, can be constructed.   But the invention here is a complete entity.   It is not a part of a mechanism or system, upon the successful operation of which the whole depends.   Car wheels of the proposed design had long been in use.   All that it was proposed to do was to take an ordinary worn steel wheel and reforge it into the proportions of a new wheel.   Neither is the invention of that unknown and novel character which justifies delay for the purpose of manufacturing new and special device with which to produce it, and where the production of the completed article of invention is necessary to establish the probability of its utility to an extent that would justify the inventor in applying for a patent.

It is conceded that the necessary dies for the reforging process could have been made in a few days; that appellees had all the facilities at hand for their speedy construction.   It is in evidence that steel car wheels were manufactured by the Schoen Steel Wheel Company, the Midvale Steel Company, and the Standard Steel Works, and that the Standard Steel Company, the Schoen Steel Wheel Company, the Midvale Steel Company, the Bethlehem Steel Company, the Standard Steel Works, and the American Car & Foundry Company, all had hydraulic presses, some of which, at least, had sufficient capacity to have enabled appellee to have tested out his invention. Especially does it appear that such presses were present in the works of the Bethlehem Steel Company, where the large castings were being made to be used in appellee's new plant.   With these facilities at hand, we think appellee was not justified in delaying his application for a period of almost two years, during which time appellant not only conceived the invention, but reduced it to practice by filing his application in the Patent Office.   We think it clearly appears from the evidence that the million-dollar plant was not being constructed primarily for the purpose of testing out this invention.   Neither did the wheel in issue constitute an essential element in the system or plan which necessitated the erection of the plant.   The com-

pany was formed, and the construction work begun, before the date which appellee fixes as his date of conception of this invention. While he may have intended ultimately to reduce the invention to practice upon the completion of the plant, it is clearly apparent from the other plants to which he had access, or could have had access, capable of enabling him to reduce it to practice, that he was not justified in his delay. The excuse that he was waiting for the completion of his plant to test out the invention is not substantiated by his actions, since he finally filed his application in the Patent Office before he made a successful test.

The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required.                                          *Reversed.*